[Civ. No. 22998. Fourth Dist., Div. One. Dec. 16, 1981.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent, v. KENNETH WAYNE AMMAR et al., Defendants and Appellants.

**COUNSEL**

James L. Huffman for Defendants and Appellants.

Portigal & Hammerton and Barry L. Allen for Plaintiff and Respondent.

## OPINION

**COLOGNE, Acting P. J.**—Kenneth and Doreen Ammar, minor children of Patricia Ammar, were injured because of the negligent driving of their mother while riding in her automobile. Each sued the mother who forwarded the claims to State Farm Mutual Automobile Insurance Company (State Farm) under its automobile liability insurance policy covering the automobile involved, in which she was the *named insured.* By its terms, State Farm had contracted to pay all sums for which she became legally liable for bodily injuries to others, except as otherwise excluded. A clause in the policy excludes liability coverage for claims brought by (1) the named insured, (2) *any other insured,* and (3) any member of the family of the named insured or other insured residing in the same household with the named insured or other insured. The policy defines "insured" as including, in pertinent part: (1) the named insured, (2) the spouse of the named insured, and "(3) *any relatives of the* [*named insured*], or of his or her spouse." "Relative" is further defined as "a person related to the named insured or spouse by blood, marriage or adoption who is a resident of the same household."

State Farm filed a declaratory relief action against its named insured seeking a determination its policy affords no coverage for her children's claims because each is an "insured," i.e., a relative living in the same household. State Farm concedes the general family exclusion (exclusion (H)(3) on p. 4 of the policy) is invalid under *Farmers Ins. Exchange v. Teachers Ins. Co.* (1980) 101 Cal.App.3d 804 [161 Cal.Rptr. 738], and *Phelps* v. *Allstate Ins. Co.* (1980) 106 Cal.App.3d 752 [165 Cal. Rptr. 263]. It contends, however, the minors are excluded under the general provision eliminating liability coverage for claims brought by "any other insured," and under the policy any relatives living in the same household of the named insured are "insureds." The children, of course, live in the same household.

The trial court found: The policy language denying coverage for bodily injury to an insured is plain, conspicuous and clear; the exclusion is permitted by Insurance Code section 11580.1, subdivision (c),[1] it being constitutional and not against public policy; and State Farm has no duty to defend or pay the claims of these children.[2]

---

[1] All references are to the Insurance Code unless otherwise specified.

[2] Certain stipulated facts were introduced at the time of the declaratory relief trial. In addition, the automobile liability policy from which the dispute arises was entered into evidence. The policy covers only a four-month period, from May 5, 1977, to September 10, 1977, and the accident occurred within that span. At the time of the accident, the children were approximately 8 and 14 years of age, respectively.

■ After years of judicial straining to reconcile the oftentimes competing interests of automobile liability insurers, their insureds and the state's interest by way of a general public policy making owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles (see *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359]), the Legislature announced the public policy "in regard to provisions authorized or required to be included in policies affording automobile liability insurance...." (§ 11580.05; *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 388 [173 Cal.Rptr. 846, 628 P.2d 1]; *Meritplan Ins. Co.* v. *Woollum* (1975) 52 Cal.App.3d 167, 174-176 [123 Cal.Rptr. 613].)[3] Concurrently with the adoption of section 11580.05, the Legislature also enacted section 11580.1, carefully delineating the minimum required coverages of, and the extent of permitted exclusions to coverage in, policies of automobile liability insurance issued in this state.

Of particular interest is the language of section 11580.1, subdivision (c)(5), which reads: "(c) In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies may, by appropriate policy provision, be made inapplicable to any or all of the following:

". . . . . . . . . . . . . .

"(5) Liability for bodily injury to an insured."

This clear and unambiguous language authorizes the carriers of automobile liability insurance to provide for exclusion of claims of liability coverage for bodily injury brought by an insured.

Several recent cases have defined the extent to which the new enactments expressly control the ability of an insurer to exclude automobile liability coverage regarding claims made against a named insured. In *Farmers Ins. Exchange* v. *Teachers Ins. Co., supra,* 101 Cal.App.3d 804, an attempt to contract with an insured to avoid coverage of claims from a class of persons as to which *no express exclusion was authorized* by section 11580.1, was declared void as against the legislatively

---

[3]Section 11580.05, in pertinent part, reads as follows: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies . . . ."

declared public policy (see also *Phelps* v. *Allstate Ins. Co., supra,* 106 Cal.App.3d 752). Conversely, in *Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d 383, denial of a claim specifically falling within the express exclusion of section 11580.1, subdivision (c)(5), was deemed insulated from attack on general public policy grounds because of the Legislature's declaration, and the statute permitting exclusion was upheld as constitutional in the face of an equal protection challenge. The children in the case at bar make the same challenges as in *Cocking.* We hold *Cocking* mandates a similar result here because the policy gives these children protection as insureds.

In *Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d 383, the court was presented with the situation where the wife was injured while riding as a passenger in a car driven by her husband and sought to recover under the indemnity afforded in his policy. Farmers, having issued a policy with language similar to that found in the instant case, sought declaratory relief. "Farmers relied upon the following exclusion in its policy: '[T]his policy does not apply under Part I (liability insurance) . . . to the liability of any insured for bodily injury to (a) the named insured, or (b) a relative of the named insured who is a resident of the same household.'" Another relevant provision of the policy provided that: "If the insured named in Item 1 of the Declarations is an individual, the term 'named insured' includes his spouse if a resident of the same household." At the time of the accident, the claimant was the named insured's wife living with him in the same household. Accordingly, all parties agreed the exclusion, if valid, would bar bodily injury coverage for her injuries.

The court provided an extensive review of the law applicable before enactment of section 11580.1, and the effect of the legislative response, concluding: "'[T]he concept of a household exclusion is a common one which has long enjoyed judicial support. Its purpose is to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control. Such an exclusion is a natural target for the insurer's protection from collusive assertions of liability. [¶] . . . [T]he freedom of the parties to exclude risks from an insurance contract is well established: [Citations.]'

"*. . . . . . . . . . . .*

"'. . . the Legislature has merely excluded one class from mandatory liability coverage, consistent with a preexisting judicial rule, founded

upon freedom of contract and the insurer's legitimate interest in minimizing future losses attributable to fraud or collusion. These considerations fully satisfy the rational basis test. The Legislature reasonably may have concluded that the benefits *to the public* from automatically including 'family member' coverage in all automobile liability policies were outweighed by the probable adverse consequences of such a rule. It is not unreasonable to suppose that substantial increases in premiums would be forthcoming if such coverage were declared mandatory. It may well have been a legislative concern that an increase in the costs of liability insurance might result in an appreciable increase in the number of uninsured drivers to the ultimate detriment of the general public. In addition, family members are frequently protected by the medical coverage provisions of the insured's policy, or by other medical or casualty insurance, thereby diluting the necessity for liability coverage. The Legislature may have deemed it unwise to require an insured to purchase expensive *liability* insurance in order to protect himself or another insured from potential injuries." (*Farmers Ins. Exchange* v. *Cocking, supra*, 29 Cal.3d 383, at pp. 389, 390.)

The California Supreme Court held the public policy established by the Legislature in section 11580.1 authorizing the exclusion of insureds has a rational basis and must be sustained as against the equal protection constitutional attack (*Farmers Ins. Exchange* v. *Cocking, supra*, at p. 389). It made no suggestions the exclusion should apply to spouses only and spoke of the family or household members as a group in the context of the permitted exclusion. Certainly the children here properly come within that group.

No valid distinction can be drawn from the fact the insureds here are minor children not of driving age. One may hypothetically conjure family members such as a day-old child with respect to whom the potential for negligence does not justify his being an "insured." Nevertheless, as the child grows, the potential for liability and the responsible parents' desire for coverage increases. As the child matures and finds himself able to manipulate the controls, the risk of liability is decidedly present. When the child reaches that stage of maturity where he thinks he can handle the car, even though he has no license and is admonished not to attempt to drive, the risk is real. We believe it would be a mistake to attempt to analyze on a case by case approach the validity of the *inclusion* of a minor child living in the household of his parents who has been named an insured on their policy. The amount of risk should not be determinative, but as suggested in *Farmers Ins. Exchange* v. *Cock-*

*ing, supra,* when it spoke of likely legislative concern for the general public to avoid an increase in the number of uninsured drivers, the family relationship justifies inclusion of the family members as insureds. That the Legislature contemplated family members who are minors as insureds under automobile liability policies is made quite clear by references in section 11580.1 (in contexts not directly pertinent here) to the all age-encompassing phrases, "a relative of the named insured who is a resident of the named insured's household" (subd. (b)(4), re permissive users covered for loading) and "resident of the same household as the named insured" (subd. (d)(1) 1, re duty of insurer to defend in certain contexts).

■  Where the inclusion as an insured is proper, the legislative authority gives the carrier the right to exclude coverage for claims against the named insured. *Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal. 3d 383, dictates an automobile liability policy may properly exclude coverage to an insured who is, under the policy provision here, a person related to the named insured or spouse by blood, marriage or adoption and is a resident of the same household.[4]

Judgment affirmed.

Wiener, J., concurred.

**WORK, J.**—I dissent:

The issue is not, as generalized by the majority, whether the Legislature could have identified relatives residing in the home of an insured as additional insureds, and by so doing encompass them within the exclusion of section 11580.1, subdivision (c)(5). The simple fact is, the Legislature did not so identify that group, any more than it so identified nonrelatives with whom the insured resides, or the members of the insured's Saturday night poker club.[1] Section 11580.1, subdivision (c)(5),

---

[4]We do not believe the classification is overbroad since the related person must live in the same household. This would make him a member of the family and within the ambit of the discussion in *Cocking.* Certainly there is no comparison to a group the size of all the residents of San Diego County as suggested by the dissent. It is highly unlikely, however, the carrier would want to cover as "insureds" a group that size in order to prevent suits against the *named* insured.

[1]State Farm concedes its defining of resident relatives as additional insureds was an "in house" decision not based on statutory definition. Thus, it concedes no statutory limits to this omnibus class. Thus, the similar clause referred to in *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 193 [130 Cal.Rptr.

was limited to excluding only those persons who fall within the category there named: insureds.

Therefore, the true, and dispositive question is: may an insurer and a *named* insured validly contract to include as *nominal* insureds, persons or classes of persons *having no potential insurable interest* (and therefore exposing insurer to no liability risk) so as to exclude those persons, without their knowledge, from claiming under the named insured's automobile liability policy?[2]

## *Discussion*

This state follows the general rule that automobile liability insurance, like other forms of insurance, must be supported by an insurable interest in the insured. (*Osborne v. Security Ins. Co.* (1957) 155 Cal. App.2d 201, 205 [318 P.2d 94]; 3 Couch on Insurance (2d ed. 1960) § 24:159, p. 273; 6A Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4253, p. 17-22; 1 A.L.R.3d 1193 et seq.; 77 A.L.R. 1256.)[3] Accordingly, section 280 generally provides: "If the insured has no insurable interest, the contract is void."

The insurable interest required for automobile liability insurance arises from the interest an "insured has in the safety of those persons who may maintain, or the freedom from damage to property which may become the basis of, suits against him in case of their injury or destruction." (3 Couch on Insurance, *op. cit. supra*, § 24:159, p. 273.) Thus, an

---

520, 550 P.2d 1056], appears to include all relatives, even nonresidents. There, as in our case, the degree of relationship is not limited so that a California insured, who while sightseeing in Philadelphia strikes his unknown fourth cousin in a crosswalk, finds he has contracted away insurance coverage.

[2]We do not now concern ourselves with whether this contract is one of adhesion.

[3]The rationale behind this rule is apparently the avoidance of wagering contracts. (*Osborne v. Security Ins. Co., supra*, 155 Cal.App.2d 201, 205; 6A Appleman, Insurance Law and Practice, *supra*; Melnick, Cal. Auto. Insurance Law Guide (Cont.Ed.Bar 1973) § 1.11, p. 10; 1 A.L.R.3d 1194, 77 A.L.R. 1257.) I doubt, however, that this underlying philosophy is pertinent to the field of automobile liability insurance. (See Hagglund, *Insurable Interest As Applied To Liability Insurance* (1963) 30 Ins. Counsel J. 238.) Indeed, in the latter field, "the insured merely attempts to indemnify himself against liability which may be imposed upon him because of his ownership, maintenance or use of the insured vehicle." (*Ibid.*) Hence, it appears that the true rationale underlying the application of the doctrine of insurable interest to liability insurance rests within the basic, contractual principles regarding consideration; for, absent a risk, or in other words an interest in potential jeopardy, the insured can lose nothing and consequently there is nothing against which an insurer can agree to insure him. (1 Long, The Law of Liability Insurance (1973) § 1.05, p. 1-8.)

insurable interest in the vehicle insured is not required as in property insurance, because the risk insured against is not predicated upon ownership, but upon potential liability for loss and injury caused by the operation or use of the insured vehicle. (6B Appleman, Insurance Law and Practice, *op. cit. supra*, § 4253, p. 17; 3 Couch on Insurance, *op. cit. supra*, § 24:159, p. 273; *Western Casualty and Surety Company* v. *Herman* (8th Cir. 1963) 318 F.2d 50, 53-54 [1 A.L.R.3d 1184, 1198]; see Hagglund, *Insurable Interest As Applied To Liability Insurance, op. cit. supra*.) Consequently, this requirement is satisfied by the establishment of *potential legal liability* of an insured, characterized by the obligation to pay damages for injury occasioned to others by his negligence in the operation or use of the vehicle. (*Western Casualty and Surety Company* v. *Herman, supra*, 318 F.2d at p. 54; *Employers National Insurance Co.* v. *Holliman* (1971) 287 Ala. 123 [248 So.2d 717, 721]; Couch on Insurance, *op. cit. supra*; Long, The Law of Liability Insurance, *op. cit. supra*, § 1.05[5], p. 1-10.1.) Section 281 codifies this rule by defining generally an insurable interest as "[e]very interest in property, or any relation thereto, or *liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured . . . .*" (Italics added.)

Absent case precedent in point, I review by analogy the law pertaining to the relationship of an insurable interest of an insured under an omnibus clause; for, an insured clause expanding coverage to all relatives residing in the household of the named insured is but a limited, omnibus provision.[4] Indeed, in some jurisdictions, "the purpose of an omnibus clause is to extend coverage beyond the limitations of the family purpose doctrine, which . . . imputes the relationship of principal and agent where one maintains an automobile for the pleasure or other use of members of his family." (12 Couch on Insurance, *op. cit. supra*, § 45:293, p. 305, 307.)

---

[4]"Automobile liability insurance policies ordinarily contain a so-called 'omnibus' clause providing that the term 'insured' includes the named insured and also any other person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission or consent." (12 Couch on Insurance, *op. cit. supra*, § 45:291, p. 304; 7 Am.Jur.2d, Automobile Insurance, § 248, p. 816.) Such permissive user coverage is required under section 11580.1, reflecting the public policy of this state to provide as much protection to the public on the highways as possible by mandating that with certain exceptions all permissive users of insured vehicles be afforded the same insurance coverages as the named insured. (*Hartford Accident & Indemnity Co.* v. *Abdullah* (1979) 94 Cal.App.3d 81, 88 [156 Cal.Rptr. 254]; *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 132 [125 Cal.Rptr. 513].)

The authorities are in agreement an omnibus clause in a liability policy is necessary since it covers a class of individuals who may or may not possess an insurable interest at the time the insurance contract is entered into.[5] It is not essential for a permissive user to have an independent insurable interest in the vehicle in order for him to be an additional insured under the omnibus provision and thus be indemnified for injury caused to others. It is sufficient that a person falling within the defined class *at the time of the accident* is in a position to become *legally liable* for the injuries suffered by another through his alleged negligence. (*Maryland Cas. Co.* v. *American Family Ins. Group* (1967) 199 Kan. 373 [429 P.2d 931, 938]; *Haynes* v. *Linder* (Mo. 1959) 323 S.W.2d 505, 512; *Williams* v. *Baltic Insurance Association of London, Ltd.* (1924) 2 K.B. 282, 290-291; Couch on Insurance, *op. cit. supra;* Long, The Law of Liability Insurance, *op. cit. supra,* § 1.05[6], p. 1-12; 77 A.L.R. 1256; 72 A.L.R. 1375; 7 Am.Jur.2d, Automobile Insurance, § 44, p. 502.) Indeed, regarding an exclusion for bodily injury to any "insured," the term "insured" has been construed to mean an "'omnibus insured *if he is the tortfeasor;* i.e., *if he is the one at fault against whom the action is brought.*'" (*Hille* v. *Safeco Insurance Company of America* (1975) 25 Ariz.App. 353 [543 P.2d 474, 476], quoting *State Farm Mut. Auto. Ins. Co.* v. *Transport Indem. Co.* (1973) 109 Ariz. 56 [505 P.2d 227, 230].) Therefore, absent the establishment of an insurable interest reflected by potential legal liability *arising from the incident in controversy,* a member within the fluctuating class of omnibus insureds does not constitute a member of the exclusion class of any insured.

Likewise, under an insured clause including resident relatives, a relative can only be excluded under an exclusion for bodily injury to "any insured" if he or she is potentially legally liable as to the incident in dispute.[6] Accordingly, the minors here cannot be so excluded. Otherwise, it would indeed be an anomaly if a neighbor who was a repetitive permissive user of the vehicle could recover under the policy where he or she was not potentially legally liable for the injuries suffered by others, but that minors, branded as resident relatives within the insured clause, unlicensed to drive any vehicle and, perhaps lacking the physical ability to

---

[5]Compare section 286 which provides in pertinent part: "An interest in property insured must exist when the insurance takes effect, and when the loss occurs, but need not exist in the meantime . . . ."

[6]Resident relatives who operate the vehicle directly, or as joint venturers with express or implied consent of the named insured do not need the "protection" of being additional insureds since they are permissive users.

do so, could be automatically excluded under such a catch-all provision. I can find no public policy consideration or statutory enactment either supporting or justifying such a result.

Further, in order to be an additionally insured, a resident relative must have an insurable interest, which in the case of an unemancipated, unlicensed minor can only occur upon the occurrence of an accident at least partially caused by his or her negligent conduct. I conclude State Farm's insured clause including any resident relative is overbroad and contrary to public policy as articulated in section 280, because it includes within its class of insureds, persons who could not possibly have an insurable interest in the nature of potential legal liability. For example, an insurable interest cannot attach to a one-day-old child residing in the home of the named insured or, in fact, to any very young child who neither has financial interest in the insured vehicle, nor is legally responsible for his or her conduct. Moreover, there is nothing magic in the mere status of being a relative, regardless whether residing in the same home with the named insured, which automatically gives rise to any insurable interest as defined in section 281.[7]

Having concluded that the insured clause is overbroad, the invalidity of State Farm's argument that it may be employed as a means to exclude bodily injuries to any insured under the general exclusion provision becomes apparent, because such a construction is clearly contrary to public policy as legislatively declared in sections 11580.05 and 11580.1, subdivision (c)(5). (See *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 388 [173 Cal.Rptr. 846, 628 P.2d 1]; *Farmers Ins. Exchange* v. *Teachers Ins. Co.* (1980) 101 Cal.App.3d 804, 809 [161 Cal.Rptr. 738].)

---

[7]State Farm's further argument that by affording coverage to each of these minors under the medical pay provision of its policy there exists sufficient insurable interest is without merit. Medical pay coverage does not arise from any provision of this policy offering to insure these minors for liability, as a separate premium for this coverage is charged.

Contracts which insure against separate and distinct risks, where the character of the hazard insured against in one part does not affect the risk on the others, are deemed severable (*Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81 [286 P.2d 816]; *Consumer's Money Ord. Corp.* v. *New Hampshire Ins. Co.* (Mo.) 386 S.W.2d 674; generally, 4 Appleman, Insurance Law and Practice, *op. cit. supra*, § 2372, p. 395), and the existence of an insurable interest under one coverage will not suffice to establish such under a separate provision purporting to insure a different interest. (*Perry* v. *Mechanics' Mutual Ins. Co.* (1882) 11 Fed. 478; *Bendall* v. *Home Indemnity Company* (1970) 286 Ala. 146 [238 So.2d 177].)

The following rules of statutory construction apply: "Where the construction of a statute is necessary, it should be interpreted so as to produce a result that is reasonable ... [in light of] the context of the law ... [and with due] consideration ... [for] the consequences that will flow from a particular interpretation." (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378].) If a statute is susceptible to two different constructions, one leading to absurd consequences and the other consistent with justice and common sense, the latter will be adopted. (*Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440, 446 [136 Cal.Rptr. 67]; *Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 36 [124 Cal.Rptr. 852].) "'It is assumed that the Legislature has in mind existing laws when it passes a statute ....'" (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) Finally, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Section 11580.1, subdivision (c)(5) permits an exclusion for bodily injury to "an insured," which the subdivision defined as "any insured under the policy." Section 280 further requires an insured to have an insurable interest. Section 11580.06 defines insured as the "named insured and any other person to whom coverage is afforded under the terms of any such [motor vehicle] policy." These provisions must be read together, authorizing the exclusion of any insured only if that insured has an insurable interest. For, permissive users or family members who have no ownership or control interest in the insured vehicle, do not possess an insurable interest until personal commission of an act from which liability under the policy could arise. I recognize that language within subdivision (c)(5)[8] may literally suggest the exclusion

---

[8]Section 11580.1, subdivision (c) provides: "In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies may, by appropriate policy provision, be made inapplicable to any or all of the following: [¶] (1) Liability assumed by the insured under contract. [¶] (2) Liability for bodily injury or property damage caused intentionally by or at the direction of the insured. [¶] (3) Liability imposed upon or assumed by the insured under any workers' compensation law. [¶] (4) Liability for bodily injury to any employee of the insured arising out of and in the course of his employment. [¶] (5) Liability for bodily injury to an insured. [¶] (6) Liability for damage to property owned, rented to, transported by, or in charge of, an insured. [¶] (7) Liability for any bodily injury or property damage with respect to which insurance is or can be afforded under a nuclear energy liability policy. [¶] (8) Any motor vehicle or class of motor vehicles, as described or designated in the policy, with respect to which

would apply regardless of whether the claimant has an insurable interest. However, such a literal reading of the provision is inappropriate because then an insurer, by naming any person or class of persons whatsoever (i.e., all persons in the County of San Diego) as an additional insured under the policy without regard to insurable interest, could exclude that person or class of persons contrary to public policy pertaining to financial responsibility and the providing of as much protection to the public on the highways as possible. Also, section 11580.1 sets forth the minimum required standards for a California automobile liability policy of insurance. It specifically designates those classes of individuals which must be covered as (1) the named insured and (2) any other person using or legally responsible for the use of such motor vehicle when used by the named insured or his permittee. (*Id.*, subd. (b)(4).) These classes, by definition, consist of persons having an insurable interest as defined in section 281. While this language does not purport to limit the carrier from providing coverage to other classes of persons, it does not reflect the intent of the Legislature to allow an insurer to extend liability coverage to persons having no legal responsibility for the use of the vehicle or who cannot be reasonably expected to use it themselves.[9]

Consequently, the determination of invalidity rests further upon the overbreadth of the general exclusion provision as to any insured patterned after the judicially approved subdivision (c)(5) (see *Farmers Ins. Exchange* v. *Cocking, supra*, 29 Cal.3d 383), resulting from its reliance upon the application of the facially overbroad insured clause. In light of my determination, it is irrelevant whether plaintiffs may have qualified as additional insured. (See *Phelps* v. *Allstate Ins. Co.* (1980) 106 Cal. App.3d 752, 758 [165 Cal.Rptr. 263].) Since this infirmity can be cured only by rewriting (reforming) the insured clause, a task which is beyond our power, the clause must be stricken. (*Id.*, at pp. 757-759.)

Finally, State Farm's reliance upon *Farmers Ins. Exchange* v. *Cocking, supra*, 29 Cal.3d 383, is misplaced. There the Supreme Court held section 11580.1, subdivision (c)(5), "is not only consistent with state

coverage is explicitly excluded, in whole or in part. [¶] *The term 'the insured' as used in paragraphs (1), (2), (3), and (4) shall mean only that insured under the policy against whom the particular claim is made or suit brought. The term 'an insured' as used in paragraphs (5) and (6) shall mean any insured under the policy.*" (Italics added.)

[9]In addition, I query under the basic principles of contract law how an insurer and a named insured can validly enter an agreement purportedly insuring a third party who does not have an insurable interest. The attempt would inevitably fail for lack of consideration on the part of the insurer, because there would exist no potential loss which the insurer could agree to indemnify.

public policy, ... [but] *constitutes and expresses that policy.*" (*Farmers Ins. Exchange* v. *Cocking, supra*, 29 Cal.3d 383, 388.) The court further upheld the provision against a challenge on equal protection grounds. (*Id.*, at pp. 389-391.) Granted, regarding the latter, the Supreme Court set forth a public policy analysis not only supporting its determination there existed several considerations fully satisfying the rational basis test, but also addressing the propriety of the family exclusion—an issue not before us. It did not, however, consider or discuss, let alone condone, the incorporation of persons having no insurable interest as nominal insureds, resulting in the exposure of the insurer to no forseeable additional liability while excluding the liability claims brought by those individuals against the legitimate insureds.

To summarize, section 11850.1, subdivision (c)(5) authorizes an insurer to exclude from coverage "[l]iability for bodily injury to an insured." Section 280 provides an individual cannot be an insured under a policy absent an insurable interest. Because State Farm has defined "an insured" under their policy to include individuals who cannot possibly have an insurable interest, that definition is overbroad when used for the purpose of excluding coverage and must be stricken. Moreover, by analogy to the statutorily mandated omnibus provision, unless a member of a class of nominally insureds has an ownership or control interest in the vehicle, that member has no insurable interest until he commits an act from which liability under the policy could arise.[10]

I would reverse.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1982. Bird, C. J., was of the opinion that the petition should be granted.

---

[10]In spite of the majority's belief (its fn. 4) that insureds would not wish to include all residents of San Diego County as additional insureds, I feel they would be delighted to minimize their exposure to claims from injuries throughout the primary area of its insured's automobile use since its exposure would only be increased to cover nonpermissive users of the insured vehicle resulting in injuries to persons not residing in the County of San Diego. After all, it is a legitimate interest of insurers to limit their risk exposure.