BIENVENIDA JARAMILLO, PERSONAL REPRESENTATIVE OF THE ESTATE OF CARMEN LUPE JARAMILLO, DECEASED, APPELLEE, V. MERCURY INSURANCE COMPANY, A CORPORATION, APPELLANT. RUBY JARAMILLO AND BIENVENIDA JARAMILLO, AS LEGAL GUARDIAN AND NEXT FRIEND OF RUBY JARAMILLO, APPELLEES, V. BIENVENIDA JARAMILLO, PERSONAL REPRESENTATIVE OF THE ESTATE OF CARRYL A. ORTIZ, DECEASED, APPELLEE, AND MERCURY INSURANCE COMPANY, A CORPORATION, APPELLANT. CINDY JARAMILLO AND BIENVENIDA JARAMILLO, AS LEGAL GUARDIAN AND NEXT FRIEND OF CINDY JARAMILLO, APPELLEES, V. BIENVENIDA JARAMILLO, PERSONAL REPRESENTATIVE OF THE ESTATE OF CARRYL A. ORTIZ, DECEASED, APPELLEE, AND MERCURY INSURANCE COMPANY, A CORPORATION, APPELLANT.

494 N.W.2d 335

Filed January 15, 1993.    Nos. S-90-275, S-90-962, S-90-963.

Richard L. Walentine and James G. Bitzes, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

John B. Ashford, of Bradford, Coenen & Ashford, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

Each of these three cases, which were consolidated for briefing and argument in this court, arises out of an automobile accident that occurred on July 15, 1986, in Dodge County, Nebraska, when the automobile owned by the decedent Carmen Lupe Jaramillo and occupied by her and her two minor children, appellees Ruby and Cindy Jaramillo, and which was driven by Carryl A. Ortiz, collided with a truck. As a result, both the driver and owner were killed and the two children were injured.

In her capacity as the personal representative of the owner's estate, appellee Bienvenida Jaramillo brought case No. S-90-275 against the owner's automobile liability insurer, the appellant, Mercury Insurance Company, for a declaration that the insurer was obligated to pay the judgment she had earlier obtained against the driver.

Appellee Ruby Jaramillo and appellee Bienvenida Jaramillo, in her capacity as legal guardian and next friend of Ruby Jaramillo, brought case No. S-90-962 against Bienvenida Jaramillo as personal representative of the driver's estate and against appellant Mercury. This suit seeks damages from both the driver's estate and Mercury as the driver's insurer.

Appellee Cindy Jaramillo and appellee Bienvenida Jaramillo, this time in her capacity as legal guardian and next friend of Cindy Jaramillo, brought case No. S-90-963 against Bienvenida Jaramillo, again in her capacity as personal representative of the driver's estate, and against appellant Mercury. This suit also seeks damages from both the driver's

estate and Mercury as the driver's insurer.

In each case, the district court sustained the appellees' motions for summary judgment and declared that Mercury's policy provided coverage for the death in the one instance and the injuries in the other instances. Mercury has appealed, asserting, in summary, that the court erroneously interpreted its policy.

For the reasons elucidated hereinafter, we reverse the judgment of the district court in the owner's case (No. S-90-275) and direct that the cause be dismissed. In the children's cases (Nos. S-90-962 and S-90-963), we affirm the judgments of the district court.

## II. FACTS

The owner, who was the natural mother of the children described earlier, was unmarried at the time of the accident and was a resident of Los Angeles County, California. The driver was likewise a resident of that location. Bienvenida Jaramillo is the maternal grandmother of the two minor children.

The owner, driver, and two children had spent the 10 days prior to the accident visiting the owner's sister in Bristow, Nebraska. At the time of the fateful event, they were en route to visit the owner's brother in Chicago, Illinois, and the driver was operating the owner's automobile with the owner's permission.

At all relevant times, Mercury was a corporation organized and doing business by virtue of the laws of California and was authorized by that state to issue automobile liability policies. The policy in question was in full force and effect on the day of the accident, named the owner as the insured, and on the page declaring the applicable coverages listed the automobile involved as one of the vehicles insured.

Under the liability portion of the policy, Mercury undertakes to "pay on behalf of the insured all sums . . . which the insured shall become legally obligated to pay as damages because of . . . bodily injury **sustained by any person other than an insured** . . . arising out of the ownership or use of the owned automobile . . . ." (Emphasis in original.)

The policy also reads, in pertinent part:

**Persons Insured:** The following are insured . . .

(a) with respect to the owned automobile

(1) the named insured and any relative,

(2) any other person using an owned automobile, with the permission of the named insured, and persons residing with such permissive user and related to such permissive user by blood, marriage or adoption, including wards and foster children . . . .

(Emphasis in original.)

The policy next provides that "**[n]amed [i]nsured** means the individual identified as such in the declarations" and that "**[i]nsured** means a person . . . described under 'Persons Insured.' " (Emphasis in original.) "Relative" is defined, so far as is relevant to our inquiry, as "a person who resides with the named insured and is related to the named insured by blood . . . ." "Use of a motor vehicle" is defined as the "operating, maintaining, or loading and unloading thereof." "Owned Automobile" is defined as a "motor vehicle listed in the declarations."

The policy also reads:

**Exclusions:** *This policy does not apply . . .*

*. . . .*

*. . . to liability for bodily injury to an insured or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured, including, in both instances, those persons who would have otherwise been included within this policy's definition of an insured but who are excluded from coverage while operating or using a motor vehicle.*

(Emphasis in original.)

### III. ANALYSES

The parties have treated these cases as if the adjudication in the owner's suit would necessarily determine the adjudication in the children's suits; however, as foreshadowed in part I above, such is not so. For that reason, we treat the two categories separately.

#### 1. OWNER'S CASE

In substance, Mercury's position is that although as one driving a listed automobile with the owner's permission the

driver was unquestionably an insured, Mercury is nonetheless not obligated to pay the judgment against the driver's estate because the beneficiary of that judgment, the owner's estate standing in the shoes of the owner, was itself an insured and thus within the aforequoted exclusion. The owner's estate, on the other hand, argues, in substance, that the use of the phrases "named insured," "an insured," and "the insured" renders the policy unclear and ambiguous, requiring that it be construed in favor of the owner's estate, as was done by the district court.

### (a) Applicable Law

Obviously, since the policy was issued in California and we sit in Nebraska, the threshold question is under what state's law the policy is to be tested.

Our rule is that the validity of a contract is to be determined by the lex loci contractus, that is, by the law of the place where the contract was made, unless there is something in the contract which is prohibited by express statute or infringes on some positive rule of public policy. *First Mid America Inc. v. MCI Communications Corp.*, 212 Neb. 57, 321 N.W.2d 424 (1982); *Jorgensen v. Crandell*, 134 Neb. 33, 277 N.W. 785 (1938). The term "contract" includes policies of insurance. See, *Exstrum v. Union Casualty & Life Ins. Co.*, 167 Neb. 150, 91 N.W.2d 632 (1958); *Lawrence v. Equitable Life Ins. Co.*, 128 Neb. 72, 257 N.W. 530 (1934).

Thus, we analyze this dispute over the interpretation of the policy under the law of California, leaving for consideration in section (c)(ii) of this part of the opinion whether there is any Nebraska statute or policy which prevents application of that law.

### (b) Interpretation of Policy

Under the law of California, the words used in an insurance policy are to be interpreted according to the plain meaning which a layperson would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. *National Auto. & Cas. Ins. v. Underwood*, 9 Cal. App. 4th 31, 11 Cal. Rptr. 2d 316 (1992), citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 640 P.2d 764, 180 Cal. Rptr. 628 (1982).

On the other hand, "any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." . . . The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy. . . . Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured . . . exclusionary clauses are interpreted narrowly against the insurer. . . ." . . . . "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again, 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect' . . . thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' . . ."

*Pisciotta*, 30 Cal. 3d at 807-08, 640 P.2d at 768, 180 Cal. Rptr. at 632. See, also, *McGreehan v. California State Auto. Ass'n*, 235 Cal. App. 3d 997, 1 Cal. Rptr. 2d 235 (1991).

" 'In short, an insurance contract is to be construed in a manner which gives meaning to all its provisions in a natural, reasonable, and practical manner, having reference to the risk and subject matter and to the purposes of the entire contract. . . .' " *Fireman's Fund Ins. v. Allstate Ins.*, 234 Cal. App. 3d 1154, 1169, 286 Cal. Rptr. 146, 155-56 (1991), quoting *State Farm Mut. Auto. Ins. Co. v. Crane*, 217 Cal. App. 3d 1127, 266 Cal. Rptr. 422 (1990).

An oft-stated rule in California is that "a policy will be construed to protect an additional insured against a claim for injuries suffered by a named insured unless such a risk is expressly and unambiguously excluded." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 200, 514 P.2d 953, 957, 110 Cal. Rptr. 1, 5 (1973). An exclusionary clause "must be

conspicuous, plain and clear." *Steven v. Fidelity & Casualty Co.*, 58 Cal. 2d 862, 878, 377 P.2d 284, 294, 27 Cal. Rptr. 172, 182 (1962).

"A policy provision is ambiguous if it is capable of at least two reasonable constructions." *Underwood*, 9 Cal. App. 4th at 39, 11 Cal. Rptr. 2d at 319, citing *Producers Dairy Delivery Co. v. Sentry Ins.*, 41 Cal. 3d 903, 718 P.2d 920, 226 Cal. Rptr. 558 (1986). "An ambiguity may appear either on the face of the policy or when a provision is applied to a particular claim for benefits." *Castro v. Fireman's Fund Am. Life Ins.*, 206 Cal. App. 3d 1114, 1119, 253 Cal. Rptr. 833, 835 (1988), citing *Rullman v. State Farm Mut. Automobile Ins. Co.*, 8 Cal. App. 3d 606, 87 Cal. Rptr. 551 (1970).

Thus, the first task in determining whether an insurance policy is ambiguous is to determine whether the policy is "reasonably susceptible of a construction other than that found by the trial court." *Producers Dairy Delivery Co.*, 41 Cal. 3d at 912, 718 P.2d at 925, 226 Cal. Rptr. at 563.

It appears, as Mercury asserts, that the exclusionary language in the policy is derived from the California Insurance Code. Cal. Ins. Code § 11580.1 (West 1988) states, in relevant part:

> (c) In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies, including the insurer's obligation to defend, may, by appropriate policy provision, be made inapplicable to any or all of the following:
>
> . . . .
>
> (5) Liability for bodily injury to an insured or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured.

The term "insured" is defined in Cal. Ins. Code § 11580.06 (West 1988), which states that this term of art "shall include the person or persons to whom any policy subject to this article is issued as named insured and any other person to whom coverage is afforded under the terms of any such policy."

The California code goes further by differentiating between "the insured" and "an insured," as used in § 11580.1(c)(8):

> The term "the insured" as used in paragraphs (1), (2), (3), and (4) shall mean only that insured under the policy against whom the particular claim is made or suit brought. The term "an insured" as used in paragraphs (5) and (6) shall mean any insured under the policy including those persons who would have otherwise been included within the policy's definition of an insured but, by agreement, are subject to the limitations of paragraph (1) of subdivision (d).

Therefore, the issue essentially becomes how the phrase "an insured," as used in the policy, is treated under California law.

In *Allstate Ins. Co. v. Condon*, 198 Cal. App. 3d 148, 243 Cal. Rptr. 623 (1988), the court determined the enforceability of an insurance policy exclusion that excluded coverage in certain instances involving "a person insured." The claimant argued that the term "a person insured" was ambiguous, thus necessitating nonenforcement of the exclusion under California law. The court, however, interpreted § 11580.1(c)(8) to state that " 'an insured' is defined as referring to all insureds under the policy, contrasted to one insured person when identified as 'the insured.' " *Condon*, 198 Cal. App. 3d at 153, 243 Cal. Rptr. at 626.

> It is true the Allstate policy herein refers to "*a* person insured". . . . "A" and "an" are analogous modifiers; one or the other is used dependent upon whether the word it modifies begins with a consonant or a vowel sound. . . . If Allstate had used the term "an person insured," the policy provision would have been grammatically incorrect. Because proper grammar necessitated this deviation from the precise statutory language, for purposes of section 11580.1, subdivision (c), "a person insured" is the functional analog of "an insured person." The Insurance Code thus defines "a person insured" as "any person insured under the policy."

(Emphasis in original.) *Condon*, 198 Cal. App. 3d at 153-54, 243 Cal. Rptr. at 626. Therefore, in accordance with this interpretation, "an insured," the language used in the subject

exclusion, means "any person insured under the policy."

In *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 514 P.2d 953, 110 Cal. Rptr. 1 (1973), a case relied upon by the owner's estate, the California Supreme Court heard three consolidated appeals involving the interpretation of identical automobile insurance policies. In each of the consolidated cases, the owner of an automobile, while riding as a passenger in his own automobile, was injured or killed in an accident caused by the negligence of the driver of the automobile. The owners held insurance policies providing liability coverage to permissive users of the owned automobile for injuries caused to "other persons," but excluded liability coverage for injury caused to "the insured." Because the parties advanced no less than three alternative interpretations of the exclusionary clause, the court concluded that the exclusions were ineffective, for they were not phrased in clear, plain, and unmistakable language. But see *Schwab v. State Farm Fire & Cas. Co.*, 27 Ariz. App. 747, 558 P.2d 942 (1976), declaring *Jacober* to be contra to the weight of authority.

Indeed, *Jacober* was distinguished in *State Farm Mut. Auto. Ins. Co. v. Hartle*, 59 Cal. App. 3d 852, 131 Cal. Rptr. 141 (1976). In *Hartle*, the court was faced with facts similar to those in the present case; therein a named insured was injured while riding as a passenger in her own automobile, which was being driven by a permissive operator. The named insured's insurance policy contained various exclusionary clauses, including one that provided that the insurance did not apply to " 'bodily injury to any insured or any member of the family of an insured residing in the same household as the insured.' " *Id*. at 855, 131 Cal. Rptr. at 143. The *Hartle* court differentiated its case from *Jacober* by noting that in *Jacober* the California Supreme Court "did not consider the effect of the Insurance Code provisions . . . ." *Hartle*, 59 Cal. App. 3d at 856, 131 Cal. Rptr. at 144. Indeed, the California Legislature did not enact § 11580.1 until 1970, after the events giving rise to the causes of action in *Jacober* had occurred.

Noting that the "*any* insured" language appearing in the policy differed from the "*an* insured" language found in § 11580.1, the *Hartle* court concluded that "the meaning of the

two terms appears to be the same, particularly in view of the specific language of subdivision (c) which states that 'The term "an insured" as used in paragraphs (5) and (6) . . . shall mean any insured under the policy.' " *Hartle*, 59 Cal. App. 3d at 857, 131 Cal. Rptr. at 144. The court held that the exclusion fell within the ambit of that permitted under § 11580.1 of the code and that it was effective to exclude coverage to the permissive user for bodily injury to the named insured.

However, the owner's estate claims that *Hartle* is inapplicable, arguing that "the policy language involved in *Hartle* is not the same as that involved in the subject policy. The Mercury policy does not say it excludes 'any insured' from coverage under the policy." Brief for appellee at 7. While the estate is correct in pointing out that the policy here utilizes language excluding "an insured" rather than *Hartle*'s "any insured," *Hartle* stands for the proposition that the two phrases are interchangeable.

In *State Farm Mut. Auto. Ins. Co. v. Ammar*, 126 Cal. App. 3d 837, 179 Cal. Rptr. 146 (1981), the minor children of the named insured were injured as a result of the named insured's negligent driving. The children sued their mother, who forwarded the claims to State Farm. A clause in the policy excluded liability coverage for claims brought by (1) the named insured, (2) any other insured, and (3) any member of the family of the named insured or other insured residing in the same household with the named insured or other insured. The California Court of Appeal affirmed the trial court's findings that the policy language was plain, conspicuous, clear, permitted by § 11580.1(c), constitutional, and not against public policy and that State Farm had no duty to defend or pay the claims of the children.

The owner's estate also cites *Employers Nat. Ins. Co. v. Cornett*, 172 Cal. App. 3d 245, 218 Cal. Rptr. 185 (1985), for the proposition that the exclusionary language in the present case is invalid. In that case a child, while a passenger in an automobile operated by his mother, was injured when the automobile collided with another automobile, which was operated by an employee of a construction company.

The insurer in *Cornett* filed a declaratory judgment action to

determine its liability with respect to the construction company's claim for comparative indemnity against the mother. The insurer had issued a policy to the mother and father of the child. The policy provided coverage for the father (the named insured) and " 'any resident of the same household.' " *Cornett*, 218 Cal. Rptr. at 186. The court's analysis centered on the viability of the exclusionary clause which stated that the policy did not apply " 'to liability for bodily injury to an insured.' " *Id*. The court held that the exclusionary language contained in the policy did not apply to the construction company's claim for implied comparative indemnity against the mother. The decision focused almost entirely on the retroactivity of the last portion of § 11580.1(c)(5), added after the date of the accident. The italicized amended portion of that section permitted the exclusion of coverage of " '(5) Liability for bodily injury to an insured *or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured*.' " (Emphasis in original.) *Cornett*, 218 Cal. Rptr. at 187. Consequently, the *Cornett* analysis is of no utility in the present case.

Moreover, the *Cornett* court incorrectly deemed the language in the policy to be identical to that in *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 514 P.2d 953, 110 Cal. Rptr. 1 (1973) (excluding coverage for injury to "*the* insured"). Rather, the questioned language in *Cornett* excluded coverage for "an insured." Indeed, the California Supreme Court, in denying review of *Cornett*, ordered that the opinion not be officially published; it thus has no precedential value in the context for which it has been cited to us. See Cal. Ct. Misc. R. 977 (rev. 1992).

Thus, a "named insured" is but a species of insured and is encompassed within either of the phrases "an insured" and "the insured." The policy is not ambiguous merely because it does not define the commonly understood articles "an" or "the." The owner comes squarely within the portion of the subject exclusion which declares that it does not apply "to liability for bodily injury to an insured."

The owner's estate urges, however, that the policy is nonetheless rendered ambiguous by the language which follows

the words of the exclusion just quoted.

In the interest of completeness, we assume, but do not decide, that the owner's estate has standing to concern itself with the meaning of the remainder of the exclusion, notwithstanding that it clearly falls within the first portion thereof.

In that connection, we begin by recalling that § 11580.1 authorizes an insurer to exclude from coverage indemnity benefits accruing "directly or indirectly" to an insured. According to *Cornett, supra*, that language was added to allow insurers to provide an exclusion for coverage in situations that became prevalent after the California Supreme Court rendered a decision which allowed partial comparative indemnity. Although the *Cornett* court found language excluding liability coverage for "bodily injury to an insured" not to encompass the cross-complaint for comparative indemnity brought by the employer of one driver in a suit by the injured son of the other driver, the *Cornett* court acknowledged that under appropriate exclusionary language, such a result was authorized by the amended statute. Thus, rather than rendering vague the exclusionary language applicable to the situation at hand, the language expressly implements what § 11580.1 authorizes.

In short, the subject exclusion does nothing more or less than implement the insuring clause which prominently calls attention to the fact that its provisions do not cover bodily injury sustained by an insured. The policy is clearly a third-party contract which protects an insured only from liability claims presented by noninsureds.

## (c) Public Policy

Having interpreted the policy, we next consider whether, as the owner's estate claims, the subject exclusion is nonetheless unenforceable because it contravenes the public policy of the State of California and, if it does not, whether it contravenes our public policy.

### (i) California Considerations

The most recent pronouncement on the subject by California's highest court is found in *Farmers Ins. Exch. v. Cocking*, 29 Cal. 3d 383, 628 P.2d 1, 173 Cal. Rptr. 846 (1981),

in which the California Supreme Court was called upon to resolve a constitutional challenge to § 11580.1(c) of the code. The court held the denial of a claim specifically falling within the express exclusion of § 11580.1(c)(5) to be insulated from attack on general public policy grounds because the California Legislature expressly authorized such. The California Legislature declared in Cal. Ins. Code § 11580.05 (West 1988) that " *'this article expresses the total public policy of this state respecting the contents of [automobile liability insurance] policies . . . .'* " (Emphasis in original.) *Cocking*, 29 Cal. 3d at 388, 628 P.2d at 3, 173 Cal. Rptr. at 848.

Moreover, the *Cocking* court upheld § 11580.1(c)(5) as constitutional in the face of an equal protection challenge, writing: "[T]he Legislature has merely excluded one class from mandatory liability coverage, consistent with a preexisting judicial rule, founded upon freedom of contract and the insurer's legitimate interest in minimizing future losses attributable to fraud or collusion." *Cocking*, 29 Cal. 3d at 390, 628 P.2d at 4, 173 Cal. Rptr. at 849. See, also, *State Farm Mut. Auto. Ins. Co. v. Ammar*, 126 Cal. App. 3d 837, 179 Cal. Rptr. 146 (1981); *20th Century Ins. Co. v. Stuart*, 129 Cal. App. 3d 370, 181 Cal. Rptr. 61 (1982).

The owner's estate misplaces reliance on *State Farm Mut. Auto. Ins. Co. v. Smith*, 109 Cal. App. 3d 575, 167 Cal. Rptr. 410 (1980), in which the court held that § 11580.1 of the code and its authorization of family exclusion clauses exceeded rational bounds and was invalid as violative of equal protection. A hearing before the California Supreme Court on *Smith* was sought prior to the *Cocking* decision. See *Reserve Ins. Co. v. Pisciotta*, 118 Cal. App. 3d 985, 173 Cal. Rptr. 852 (1981), *vacated* 30 Cal. 3d 800, 640 P.2d 764, 180 Cal. Rptr. 628 (1982). However, according to Westlaw Insta-Cite, on July 22, 1981, approximately 2 months after the supreme court handed down *Cocking*, it retransferred *Smith* to the court of appeal. The opinion on retransfer was not published. Therefore, the *Smith* holding is of no value in determining the issue before us. in determining the issue before us.

Since the language of the exclusion in question marches in step with the words of the California Legislature and has not

been found to suffer any constitutional infirmity, it is not violative of California public policy.

### (ii) Nebraska Considerations

At this point, the question becomes whether the exclusion nonetheless cannot be enforced in this state because it violates some Nebraska statute or public policy. We begin by noting that the owner's estate does not claim any such impediment to enforcement; its analysis of the case proceeds on the premise that the matter is to be resolved entirely under the law of California. In that regard, it is correct.

While language can be found comforting to a court which wishes to avoid the application of a rule of law it does not like, see, e.g., *Paul v. National Life*, 177 W. Va. 427, 352 S.E.2d 550 (1986), it is "a rare case in which a claim validly existing under the law of one American state can be said to be so far outside the pale of social, economic, and moral standards currently imposed by our civilization as to be violative of the strong public policy of any sister state." Robert A. Leflar et al., American Conflicts Law § 45 at 145 (4th ed. 1986).

Thus, a Tennessee court in *Diviney v. Vineyard*, No. 01-A-01-9012-CV00458, 1991 WL 66480 (Tenn. App. May 1, 1991), applied the guest statute of Alabama in denying recovery for injuries sustained in an accident that occurred in Alabama; a Missouri court in *Bruton v. Shelter Mut. Ins. Co.*, 748 S.W.2d 379 (Mo. App. 1988), applied the law of Arkansas in determining whether the seller owned an automobile involved in an accident in Missouri; and a Texas court in *Crisman v. Cooper Industries*, 748 S.W.2d 273 (Tex. App. 1988), applied Florida's statute of repose in a products liability suit brought on behalf of the family of a decedent who was killed when a pickup truck with an allegedly poorly marked trailer pulled in front of the vehicle in which the decedent was riding as a passenger in Florida.

Indeed, not only does the owner's estate not point to any Nebraska statute or other source of Nebraska public policy which denies enforceability to the subject exclusion, we have approved a similar exclusion in a policy of insurance issued in Nebraska. See *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233

Neb. 248, 444 N.W.2d 676 (1989) (the court ruled enforceable an exclusion from protection for bodily injury to the insured or any member of the family of the insured residing in the same household as the insured).

## 2. CHILDREN'S CASES

While the joining by each child of the driver's estate with Mercury as defendants in a single suit for damages seems irregular, we do not concern ourselves with the issue, for no question as to the correctness of that procedure is presented to us.

### (a) Jurisdiction

However, since we lack jurisdiction to entertain appeals from other than final orders, *In re Interest of L. W.*, 241 Neb. 84, 486 N.W.2d 486 (1992), we are required to determine on our own inquiry whether the orders granting appellees' motions for summary judgment against Mercury are final.

Ordinarily, an order in a civil action, that is to say, in a cause brought under the provisions of chapter 25 of our statutes, is final when no further act of the trial court is required to dispose of the cause. *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991); Neb. Rev. Stat. § 25-1902 (Reissue 1989). Generally, an interlocutory summary adjudication of liability alone, which does not decide the question of damages, is not appealable. *Hart v. Ronspies*, 181 Neb. 38, 146 N.W.2d 795 (1966). However, an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment is final. *In re Interest of R.G., supra.*

Here, the policy obligates Mercury to defend any suit alleging bodily injury and seeking damages payable under its terms. Thus, the summary judgments in these cases affect one of Mercury's substantial rights and prevent a judgment in its favor on that issue. Accordingly, the judgments are final and appealable. *West American Insurance Co. v. Vago*, 197 Ill. App. 3d 131, 553 N.E.2d 1181 (1990), *appeal denied* 133 Ill. 2d 574, 561 N.E.2d 710 (order declaring insurers had duty to defend but dismissing without prejudice the issue as to duty to indemnify held to be final and appealable).

## (b) Interpretation of Policy

As reflected in part II, any relative of the named insured is an insured. So far as is relevant to the facts before us, in order to qualify as such a relative, the person in question must not only be related to the named insured by blood, but must also reside with that insured. There can be no question that children are related to their natural mother by blood. See, *In re Kristin B.*, 187 Cal. App. 3d 596, 232 Cal. Rptr. 36 (1986) (grandparents are blood relatives); *Nye v. Grand Lodge, Ancient Order of United Workmen of Ind., et al.*, 9 Ind. App. 131, 36 N.E. 429 (1893) (blood relationship is a term of very comprehensive meaning, including those persons who are of the same family stock or descended from a common ancestor); *Baker v. Hardy*, 96 Neb. 377, 148 N.W. 80 (1914) (mother blood relative of son).

However, we neither find nor are directed to any proof in this record that the children resided with their mother. It cannot be inferred from the mere fact that the children spent the last 10 days preceding the accident with their mother that they resided with her.

A summary judgment is properly granted only when the record discloses that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the movant is entitled to judgment as a matter of law. *Howard v. Blue Cross Blue Shield, ante* p. 150, 494 N.W.2d 99 (1993); *Allied Mut. Ins. Co. v. Musil, ante* p. 64, 493 N.W.2d 171 (1992); *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992). The movant has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that if the evidence presented remains uncontroverted, the movant is entitled to judgment as a matter of law. *Howard, supra*; *Alder, supra.* After the movant has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing the existence of an issue of material fact which, as a matter of law, prevents the entry of judgment in favor of the movant. *Howard, supra*; *Alder, supra.*

The court in *Olson v. Omaha & C. B. Street R. Co.*, 131 Neb. 94, 267 N.W. 246 (1936), a negligence action arising out of an Iowa occurrence, seemingly recognized that under Restatement

of Conflict of Laws § 595 (1934), the law of the forum governs the placement of the burden of proof, but concluded that inasmuch as a plaintiff's freedom from contributory negligence was a condition of the Iowa cause of action, the law of Iowa controlled and thus placed upon the plaintiff the burden of proving herself free of contributory negligence. Most courts apply the forum's rule as to who has the burden of proof on an issue, Robert A. Leflar et al., American Conflicts Law § 124 at 342 (4th ed. 1986), and that is the rule we generally follow.

Under our law, the burden to prove that an exclusionary clause applies rests upon the insurer. See, *Thorell v. Union Ins. Co., ante* p. 57, 492 N.W.2d 879 (1992); *Robinson v. State Farm Mut. Auto. Ins. Co.*, 188 Neb. 470, 197 N.W.2d 396 (1972). As a matter of academic interest, such is also the rule of California. *American Star v. Insurance Co. of the West*, 232 Cal. App. 3d 1320, 284 Cal. Rptr. 45 (1991).

So far as the record shows, there is no factual dispute that the children are not insureds and that they are thus entitled to judgment as a matter of law.

## IV. JUDGMENTS

Reiterating that which was written in part I, the district court's judgment in the owner's case is reversed and the cause remanded with the direction that it be dismissed; the judgment in each of the children's cases is affirmed.

JUDGMENT IN NO. S-90-275 REVERSED, AND CAUSE REMANDED WITH DIRECTION. JUDGMENTS IN NOS. S-90-962 AND S-90-963 AFFIRMED.

WHITE, J., concurs in No. S-90-275.