Filed 9/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MERCURY CASUALTY COMPANY, | |
|    Plaintiff and Appellant, | G049132 |
|       v. | (Super. Ct. No. 30-2012-00556310) |
| HUNG CHU et al., | O P I N I O N |
|    Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Luis A. Rodriguez and William D. Claster, Judges.  Reversed and remanded.

O'Connor, Schmeltzer & O'Connor, Lee P. O'Connor and Timothy J. O'Connor for Plaintiff and Appellant.

Angelo & Di Monda, Joseph Di Monda and Christopher E. Angelo for Defendant and Appellant Tu Pham.

Law Offices of Anh QD Nguyen, Jeffrey T. Lauridsen and Anh QD Nguyen for Defendant and Appellant Hung Chu.

Mercury Casualty Company (Mercury) filed an action seeking declaratory relief regarding its insurance obligation towards students Hung Chu (Chu) and his roommate Tu Pham (Pham).  Mercury issued an automobile policy to Chu insuring his

1995 Honda Accord. Chu was driving, and Pham was a passenger, when Chu collided with a vehicle driven by Krystal Nguyen Hoang (Hoang). Pham filed a personal injury action against Chu and Hoang and obtained a $333,300 judgment against Chu. Mercury sought a judicial determination confirming Mercury's decision Chu's policy excluded coverage for Pham's judgment under the "resident exclusion." Mercury also sought an order requiring Chu to reimburse Mercury the fees and costs it incurred in defending him against Pham's lawsuit.

Chu filed a cross-complaint against Mercury for breach of contract, bad faith, and general negligence. Mercury prevailed in its motion for summary adjudication on the issue of whether the policy provided coverage for Pham's judgment. The court determined Mercury had no duty to indemnify Chu with respect to the judgment. It granted Mercury's motion for judgment on the pleadings (JOP) on Chu's cross-complaint but determined Mercury could not seek reimbursement of its attorney fees and costs in defending Chu because such damages were not sought in the JOP. Both parties filed appeals.

Chu and Pham appeal the court's determination Mercury's policy excludes coverage for Pham's personal injury lawsuit against Chu. Mercury appeals the court's ruling Chu was not required to reimburse Mercury for the defense fees and costs. We reverse the judgment, concluding the policy provision excluding Pham from coverage is an overbroad expansion of the statutorily permitted exclusion and is also contrary to public policy. The rulings on the summary adjudication motion and JOP are reversed and the matter remanded. Based on this ruling, we need not address the issue raised in Mercury's cross-appeal regarding its entitlement to defense costs and fees.

I

*A. Underlying Facts: The Accident*

In October 2008 Chu's vehicle collided with Hoang's vehicle at the intersection of Chapman Avenue and Gilbert Street in Garden Grove, California. Chu

was driving his 1995 Honda Accord westbound on Chapman Avenue in the left turn lane and made a left turn directly in front of Hoang.  Pham, who was a passenger in Chu's vehicle, was injured.

*B.  Mercury's Policy*

Mercury issued an automobile insurance policy for Chu's 1995 Honda Accord for the period from September 12, 2008, to March 12, 2009.  The policy identified Chu's address as 9262 Lampson Avenue, Garden Grove, CA 92841 (hereafter the Lampson residence). The bodily injury limits were $15,000 per person and $30,000 per accident.

Relevant to this case, the liability coverage provision listed in Part I of the policy provided in relevant part:

"Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability:  To pay on behalf of the insured all sums, except punitive or exemplary damages, which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury sustained by any person other than an insured;

"B. property damage[.]"  (Italics omitted.)

Part I of the policy also defined persons insured as follows:  "Persons Insured:  The following are insured under Part I:

"(a) With respect to the owned automobile:

"(1) the named insured and any relative,

"(2) persons listed as drivers in the policy declarations,

"(3) any other person using an owned automobile, provided it is used with the permission of the named insured . . .,

"(4) residents other than described in (a)(l) or (a)(2), above."

On the next page, Part I of the policy also contains several definitions, including the term "resident."  It provides, "Resident means an individual who inhabits

3

the same dwelling as the named insured." The terms "inhabits" and "dwelling" are not defined.

Mercury's policy also contained several pages of exclusions. Relevant to this case, subdivision (g), provided, "[This policy does not apply under Part I] . . . to liability for bodily injury to *an insured* or liability for bodily injury to *an insured* whenever the ultimate benefits of that indemnification accrue directly or indirectly to *an insured*, including, in both instances, those persons who would have otherwise been included within this policy's definition of an insured but who are excluded from coverage while using a motor vehicle" (hereafter referred to as Exclusion (g), italics added).

Under Exclusion (g), Mercury need not provide coverage for bodily injury to anyone included in the policy's definition of "an insured." Because Part I defines "an insured" as including all "residents" who inhabit the same dwelling as the named insured, Mercury need not provide coverage for bodily injury to anyone inhabiting the same dwelling as Chu. Mercury calls this a "resident exclusion."

*C. Mercury's Coverage Investigation*

Mercury conducted a coverage investigation and in December 2008 interviewed Chu on the telephone. Chu reported he and Pham were friends and lived together at the Lampson residence, owned by Chu's relatives. Chu stated he had lived there for one year before the accident and Pham moved into the house several months prior, in August 2008. Chu acknowledged the statements made during the telephone interview were made under penalty of perjury.

That same day, Mercury interviewed Pham, who confirmed he was friends with Chu and they lived together at the Lampson residence. Pham stated he had lived there since September 2008. Pham confirmed he did not live at any other addresses and used the Lampson residence as his mailing address. Pham acknowledged the statements made during the telephone interview were made under penalty of perjury.

4

On January 27, 2009, Mercury sent a letter to Pham stating he qualified as "an insured" under the policy issued to Chu because he resided with Chu at the same address. Mercury cited Exclusion (g) of Chu's policy and provided him with a copy of the entire policy. Mercury informed Pham it was denying bodily injury coverage. Mercury also sent a copy of the letter to Chu.

### D. Pham's Personal Injury Lawsuit

Pham filed a complaint for personal injuries against Chu and Hoang. On April 11, 2011, Mercury sent a reservation of rights letter to Chu stating it would provide Chu with a defense to the lawsuit but it was still asserting Pham's injuries were not covered by the policy. In addition, the letter advised Chu that Mercury would seek reimbursement of the attorney fees and costs incurred in defending the lawsuit. Pham's case was heard by a jury that awarded Pham $333,300 against Chu.

### E. Mercury's Complaint for Declaratory Relief and Chu's Cross-complaint

On March 22, 2012, Mercury filed a complaint raising a single cause of action for declaratory relief. Mercury requested the court "determine and declare that the policy of insurance issued" to Chu excluded coverage for Pham's judgment arising out of the October 2008 automobile accident. Mercury requested the court order Chu to reimburse it "for all costs it incurred in providing him with a defense to [Pham's] lawsuit." Pham and Chu filed answers to the complaint.

Chu filed a cross-complaint against Mercury for bad faith, breach of contract, and negligence. Pham filed a cross-complaint in intervention to join in Chu's cross-complaint against Mercury.

### F. Chu's Deposition

Before trial, Chu testified in his deposition he was born in Vietnam and came to the United States in 2006 as a student. He first attended Garden Grove High School while living with an aunt and uncle at 10681 Lampson in Garden Grove. After approximately one year, Chu moved in with different relatives (Uncle Hung, Aunt Diana,

5

and their two children) at the Lampson residence.  He lived there while he attended Orange Coast College in 2008.  His parents remained in Vietnam, and he recalled his father visited him one time.  At the time of the accident in October 2008, Chu was living at the Lampson residence.

Chu stated Pham was a family friend he met in Vietnam and lived with him at the Lampson residence after Pham came to the United States.  Chu testified he did not know Pham very well before they became roommates.  He and Pham shared a bedroom beginning in May or July 2008 to minimize their expenses.  Chu and Pham paid Aunt Diana rent.

Chu testified he ate his meals with his aunt and uncle every day, and they did not charge him for meals.  Pham ate with them 50 percent of the time.  Chu and Pham were allowed to use the kitchen, family room, dining room, and one of the bathrooms.  They lived at this residence for approximately two years.

In 2009, Chu and Pham moved to a residence on Nieta Drive in Garden Grove, where they lived for over a year with Chu's other relatives (Uncle Tony).  Chu then rented a house with four other students in Santa Ana.  Chu stated he and Pham lived together until Pham returned to Vietnam in June 2012 after earning a degree at California State University, Fullerton.  Chu did not keep in touch with Pham and did not know what Pham got his degree in.  He explained they drove to school together but did not attend social functions together.  Chu stated he spent time with his own friends.

G. *Mercury's Motion for Summary Adjudication*

Based on Chu's deposition testimony, Mercury filed a motion for summary adjudication on their complaint of the following issue:  Did Mercury have a duty to indemnify Chu for Pham's judgment under the policy?  Chu and Pham opposed the motion asserting Mercury's policy contained ambiguities and inconsistencies and defeated Chu's reasonable expectations of coverage.  Mercury filed a reply.

6

In December 2012 the court (Judge Luis A. Rodriguez) considered and granted the motion. The order stated, "There is no triable issue as to any material fact and [Mercury] is entitled as a matter of law to summary adjudication in its favor and against [Chu and Pham]. The court determines and declares that [Mercury's insurance policy] clearly and unambiguously excludes coverage for [Pham's] judgment obtained . . . against . . . Chu . . . . At the time of the accident, [Chu and Pham] inhabited the same household and the [insurance] policy . . . excludes coverage for bodily injury suffered by residents of the same household as the named insured under Exclusion (g) of the policy. [Mercury] . . . has no duty to indemnify [Chu] with respect to the judgment rendered in favor of [Pham]." The only issue remaining with respect to Mercury's action was its request to be reimbursed defense fees and costs.

## H. Mercury's Motion for JOP

The following month, Mercury filed a motion for JOP "directed against" Chu's cross-complaint. Mercury asserted that because the trial court determined in granting summary adjudication that Mercury had no duty to indemnify Chu for Pham's judgment, Mercury could not have breached the insurance policy, acted in bad faith, or negligently handled Pham's claim against Chu.

Chu and Pham did not oppose the motion and stipulated they would agree to the entry of a judgment in favor of Mercury on the cross-complaint while preserving the right to appeal.

## I. Dispute Over Fees and Costs

On February 22, 2013, Mercury e-mailed Chu's counsel a proposed judgment stating the following: (1) judgment was in Mercury's favor; (2) the insurance policy excluded coverage for Pham's lawsuit; and (3) Mercury was entititled to be reimbursed for defense fees and costs incurred in Pham's lawsuit in the sum of $125,881.55 against Chu.

7

On March 7, 2013, Chu objected to the proposed judgment's inclusion of the defense costs. On March 26, 2013, Mercury submitted a proposed "amended judgment" increasing the amount of reimbursable defense costs to $129,720.08. Chu filed an objection to the proposed amended judgment. Chu stated he was not given an opportunity "to review the back-up documentation pertaining" to the award and Mercury had not met its burden of proving entitlement to defense fees and costs.

*J. The Court's Ruling*

On March 28, 2013, the trial court granted the JOP as to Chu's cross-complaint and vacated the trial date. The court directed Mercury to file a revised judgment. Based on Chu's representation he planned to file objections, the court stated it would set the matter for a hearing after the objections had been filed.

On April 9, 2013, Chu submitted a judgment that did not include language requiring Chu to reimburse Mercury for the defense fees and costs. Two days later, Mercury objected to the judgment on the grounds that it did not include reimbursable defense costs. On April 15, 2013, the court (Judge William Claster) signed and entered Chu's judgment.

*K. Mercury's Motion for Entry Of Judgment*

Before discovering judgment had been entered, Mercury filed a motion for entry of judgment on May 15, 2013, requesting the judgment include a reimbursement award of $133,718.98, or alternatively, set the matter for trial to determine if Mercury was entitled to reimbursement and if so, the amount thereof. Mercury explained the amount of attorney fees increased because Mercury received an additional bill from defense counsel.

Chu opposed the motion arguing the issues had already been ruled upon and a final judgment entered. Chu asserted it was too late to make a motion for reconsideration. He also argued Mercury was not entitled to recover fees and costs incurred in Pham's action because there was a potential the claims were covered under

8

the policy. Moreover, if Mercury had "settled the case within policy limits as demanded by the injured party no defense costs or attorney fees would have been incurred."

Mercury filed a reply, asserting it was not served with the judgment and it was therefore improperly entered. Mercury stated the issue of reimbursement was never adjudicated nor ruled upon by the court. It was not an issue raised in the summary adjudication or JOP. Mercury argued the judgment should be vacated.

At the hearing on the motion, Mercury's counsel requested the matter be set for trial on the complaint for declaratory relief for the court to determine the reimbursement issue. Judge Claster denied Mercury's request for a trial and its motion for entry of the amended proposed judgment.

The trial court's minute order stated, "The [j]udgment will stand as previously entered." The notice of ruling stated the court adopted its tentative ruling, and the following: "'[A]s Mercury specifically notes in its [r]eply, Mercury never filed any motion seeking an award of fees it had incurred in the underlying action in these proceedings. [Citation.] It is thus undisputed that Mercury never obtained any right to recover on its claim for reimbursement of the fees incurred in the underlying action . . . and that it had not requested such relief when it signed a stipulation for entry of judgment. As Mercury's claim for recovery of attorney[] fees in the underlying action was a claim for affirmative relief, which it did not ever pursue before stipulating to entry of judgment, it cannot now seek, through a motion for entry of judgment, a judgment granting it such affirmative relief. The judgment entered on [April 15, 2013,] is therefore correct: the clerk shall give notice of entry of judgment as entered on [April 15, 2013].'" The notice of ruling added the court's additional observation that Mercury never asked the court to determine if it had a duty to defend Chu, and this issue cannot now be brought before the court.

9

II

Chu and Pham appeal the trial court's order granting summary adjudication in favor of Mercury, interpreting the automobile policy as not providing coverage for injury to Chu's college roommate. They raise the following arguments: (1) Exclusion (g) based upon the definition of "resident" was overbroad, inconspicuous, and defeated Chu's reasonable expectation of coverage; (2) the policy created illusory coverage for a large classification of people and therefore must be conspicuously located in the policy to properly alert the insured of the unusual coverage restrictions; and (3) the definition of "resident" was ambiguous and should be construed in Chu's favor. For the reasons stated below, we conclude the judgment must be reversed.

A. *Standard of Review*

"A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo. [Citations.]" (*Lunardi v. Great–West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819.) "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.)

This appeal narrowly concerns the application of the provisions of the applicable insurance policies to undisputed facts. "The interpretation of an insurance policy as applied to undisputed facts . . . is a question of law for the [appellate] court, which is not bound by the trial court's construction. [Citation.]" (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590.)

B. *General Principles Regarding Automobile Insurance*

"After years of judicial straining to reconcile the oftentimes competing interests of automobile liability insurers, their insureds and the state's interest by way of a general public policy making owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles [citation], the Legislature announced the

10

public policy 'in regard to provisions authorized or required to be included in policies affording automobile liability insurance. . . .' ([Ins. Code,] § 11580.05; [1] *Farmers Ins. Exchange v. Cocking* [(1981)] 29 Cal.3d 383, 388 [(*Cocking*)]; *Meritplan Ins. Co. v. Woollum* [(1975)] 52 Cal.App.3d 167, 174-176.) Concurrently with the adoption of section 11580.05,[2] the Legislature also enacted section 11580.1, carefully delineating the minimum required coverages of, and the extent of permitted exclusions to coverage in, policies of automobile liability insurance issued in this state." (*State Farm Mutual Auto. Ins. Co. v. Ammar* (1981) 126 Cal.App.3d 837, 840, fn. omitted (*Ammar*).)

Section 11580.1, subdivision (c), lists the only permissible exclusions from coverage allowed under California law for an automobile liability insurance policy. "Any exclusion not expressly authorized by section 11580.1 is therefore impermissible and invalid. [Citation.]" (*California State Auto. Assn. Inter-Ins. Bureau v. Gong* (1984) 162 Cal.App.3d 518, 528.) It provides: "[T]he insurance afforded by any policy of automobile liability insurance to which subdivision (a) applies, including the insurer's obligation to defend, may, by appropriate policy provision, be made inapplicable to any or all of the following: [¶] (1) Liability assumed by the insured under contract. [¶] (2) Liability for bodily injury or property damage caused intentionally by or at the direction of the insured. [¶] (3) Liability imposed upon or assumed by the insured under any workers' compensation law. [¶] (4) Liability for bodily injury to any employee of the insured arising out of and in the course of his or her employment. [¶] (5) *Liability*

---

1         All further statutory references are to the Insurance Code, unless otherwise indicated.

2         Section 11580.05, in pertinent part, reads as follows: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies . . . ."

11

*for bodily injury to an insured or liability for bodily injury to an insured whenever the*

*ultimate benefits of that indemnification accrue directly or indirectly to an insured.* [¶]

(6) Liability for damage to property owned, rented to, transported by, or in the charge of,

an insured. A motor vehicle operated by an insured shall be considered to be property in

the charge of an insured. [¶] (7) Liability for any bodily injury or property damage with

respect to which insurance is or can be afforded under a nuclear energy liability policy.

[¶] (8) Any motor vehicle or class of motor vehicles, as described or designated in the

policy, with respect to which coverage is explicitly excluded, in whole or in part."

(§ 11580.1, subd. (c), italics added.)

Relevant to this case, section 11580.1, subdivision (c)(5) (hereafter the

(c)(5) Exclusion), authorizes the carriers of automobile liability insurance to provide for

exclusion of claims of liability coverage for bodily injury brought by "an insured."

Specifically, the exclusion permits exclusion of liability to either "an insured" *or* "an

insured whenever the ultimate benefits of that indemnification accrue directly or

indirectly to an insured." (§ 11580.1, subd. (c)(5).)

We note the eight permitted exclusions discussed in section 11580.1,

subdivisions (c), refer to "the insured" and "an insured." These two terms are further

defined in section 11580.1, subdivision (c)(8), as follows: "'The insured' as used in

paragraphs (1), (2), (3), and (4) shall mean only that insured under the policy against

whom the particular claim is made or suit brought. 'An insured' as used in paragraphs

(5) and (6) shall mean any insured under the policy including those persons who would

have otherwise been included within the policy's definition of an insured but, by

agreement, are subject to the limitations of paragraph (1) of subdivision (d) [designated

driver exclusion]."[3] Thus "an insured" is "any" person who fits the definition of "an

---

[3]          Section 11580.1, subdivision (d)(1), permits the insurance company to exclude from coverage any person specifically named by the insured.

insured" regardless of whether he or she was expressly excluded from coverage by the insured in an effort to reduce the premium. (See *Yamasaki v. Mercury Casualty Ins. Co.* (1992) 11 Cal.App.4th 830, 835, fn. 3 [to reduce premium insured excluded from policy a person "who would normally operate the subject vehicle but either because of age or driving record is considered a high risk"].) Simply stated, the Legislature permits a person excluded from beneficial coverage to be deemed "an insured" for purposes of the exclusions listed in paragraphs (5) and (6) of section 115801, subdivision (c).

C. *Case Authority Regarding the (c)(5) Exclusion*

There are many cases that have defined the extent to which the eight statutorily authorized exclusions control an insurer's ability to exclude automobile liability coverage. We begin by reviewing our Supreme Court's decision in *Cocking, supra,* 29 Cal.3d 383, that addressed challenges to the (c)(5) Exclusion on both public policy and equal protection grounds. In that case, the insurer (Farmers) brought a declaratory relief action against the insured (Husband) and the insured's wife (Wife) seeking to avoid indemnifying Husband under his automobile policy for damages he caused Wife while she was a passenger in a car driven by Husband. The trial court entered summary judgment in favor of Wife based on the conclusion the (c)(5) Exclusion was unconstitutional. Our Supreme Court disagreed and reversed, concluding the statute was consistent with state public policy and was rationally related to a legitimate state purpose, and therefore, did not deny equal protection. (*Cocking, supra,* 29 Cal.3d at p. 388.)

In the *Cocking* case, the insurance policy contained the following exclusion: "'[T]his policy does not apply under Part I (liability insurance) . . . to the liability of any insured for bodily injury to (a) the named insured, or (b) a relative of the named insured who is a resident of the same household.' Another relevant provision of the policy provided that: 'If the insured named in Item 1 of the Declarations is an individual, the term "named insured" includes his spouse if a resident of the same

13

household.' It is undisputed that at the time of the accident [Wife and Husband were married and living] in the same household. Accordingly, all parties agree that the exclusion, if valid, would bar bodily injury coverage for her injuries." (*Cocking, supra,* 29 Cal.3d at p. 386.) The Supreme Court noted the policy's exclusion was "expressly authorized by section 11580.1, subdivision (c) . . . ." (*Cocking, supra,* 29 Cal.3d at p. 386.)

The Court first addressed Wife's public policy argument based on the theory the exclusion was unenforceable because it violated public policy "expressed in Civil Code section 1714, subdivision (a), making every person responsible for his [or her] own negligent acts." (*Cocking, supra,* 29 Cal.3d at p. 388.) Wife also asserted section 11580.1 conflicted "with the general policy favoring adequate recovery for persons injured in automobile accidents. [Citation.]" (*Cocking, supra,* 29 Cal.3d at p. 388.)

The Court explained public policy claims had been "repeatedly rejected both by us and the Court of Appeal. [Citations.]" (*Cocking, supra,* 29 Cal.3d at p. 387.) It was referring to one of its opinions written in 1976, in which the Court observed, "'In a line of cases extending at least back to 1966, supported by authorities from other jurisdictions extending back considerably further than that, the courts of this state (have) indicated that a liability insurance provision excluding the named insured *or members of his family* from coverage [is] valid and not in contravention of public policy. [Citations.] In view of these authorities the Legislature in 1970 . . . amended section 11580.1 . . . to expressly permit such an exclusion.' [Citation.]" (*Cocking, supra,* 29 Cal.3d at p. 387, italics added.)

With respect to Wife's specific contentions, the Court reasoned, "the [(c)(5) E]xclusion . . . is not contrary to the policy expressed in the Civil Code because it is self-evident that an injured party, such as [Wife], retains the full unrestricted right to sue the negligent insured. [Citation.] The exclusion affects only the right to reach insurance

proceeds for the satisfaction of any judgment obtained.  Second, and more fundamental, reliance upon *general* principles favoring recovery for injuries is misplaced.  With respect to the specific issue before us, *the public policy of this state* is contained not in broadly expressed generalized abstractions but in the applicable statutory provisions themselves.  Section 11580.05 expressly recites that 'The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state *shall be as stated in this article*, [and] that *this article expresses the total public policy of this state respecting the contents of such policies*, . . .'" (Italics added.) Thus, section 11580.1, subdivision (c), is not only consistent with state public policy, *it itself constitutes and expresses that policy*.  [Citation.]  [¶]  [T]he Legislature's decision to authorize automobile insurers to continue to exclude bodily injury liability to an insured under the policy is supported by a variety of rational, legitimate reasons.  That we may disagree with some or all of these reasons affords no justification whatever for the substitution of our own view of what is proper public policy for that of the Legislature.  [Citation.]" (*Cocking, supra,* 29 Cal.3d at pp. 388-389.)

The Supreme Court also considered Wife's challenge on equal protection grounds, arguing the exclusion was irrational and arbitrary.  The Court stated, "The applicable review standard for testing the constitutionality of [the (c)(5) Exclusion], is the so-called 'traditional' or 'restrained' standard which requires courts to uphold the validity of a legislative classification if it rationally relates to a legitimate state purpose.  [Citations.]  In applying this standard, courts must conduct a 'serious and genuine judicial inquiry' into the nature of the connection between the particular classification and the legislative goals.  [Citation.]" (*Cocking, supra,* 29 Cal.3d at p. 389.)

The *Cocking* court reasoned, "As previously noted, the challenged provision permits, *but does not require*, automobile insurers to continue to exclude coverage for bodily injury liability to insureds (usually, family household members).  The

15

primary basis underlying the use of this exclusion has been well described in a recent Indiana case: '[T]he concept of a household exclusion is a common one which has long enjoyed judicial support. Its purpose is to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control. Such an exclusion is a natural target for the insurer's protection from collusive assertions of liability. [¶] . . . [T]he freedom of the parties to exclude risks from an insurance contract is well established: [Citations.]' [Citations.] [¶] Defendants argue that the prevention of fraud or collusion has been deemed to be an insufficient and overbroad justification for a blanket rule of immunity from suit. [Citations.] A statute which purported to immunize an insured driver from bodily injury liability actions by other insured family members might be constitutionally invalid. . . . '[I]t is unreasonable *to eliminate causes of action* of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits.' [Citation.]" (*Cocking, supra,* 29 Cal.3d at pp. 389-390.)

The Supreme Court decided that in the case before it, "no such immunity is conferred, and no such causes of action are abrogated. Rather, the Legislature has merely excluded one class from mandatory liability coverage, consistent with a preexisting judicial rule, founded upon freedom of contract and the insurer's legitimate interest in minimizing future losses attributable to fraud or collusion. These considerations fully satisfy the rational basis test. The Legislature reasonably may have concluded that the benefits *to the public* from automatically including 'family member' coverage in all automobile liability policies were outweighed by the probable adverse consequences of such a rule. It is not unreasonable to suppose that substantial increases in premiums would be forthcoming if such coverage were declared mandatory. It may well have been a legislative concern that an increase in the costs of *liability* insurance might result in an appreciable increase in the number of uninsured drivers to the ultimate detriment of the general public. In addition, family members are frequently protected by the medical

16

coverage provisions of the insured's policy, or by other medical or casualty insurance, thereby diluting the necessity for liability coverage. The Legislature may have deemed it unwise to require an insured to purchase expensive liability insurance in order to protect himself or another insured from potential injuries." (*Cocking, supra,* 29 Cal.3d at p. 390.) Finally, our Supreme Court concluded that to require family member liability coverage "against the better judgment of the contracting parties would constitute an unprecedented judicial interference into private contractual and economic arrangements in direct contravention of the public policy legislatively expressed in section 11580.1." (*Cocking, supra,* 29 Cal.3d at pp. 390-391.)

In conclusion, the *Cocking* court determined an insurance policy's "resident relative" exclusion was in sync with public policy and was constitutionally sound because it was rationally related to a legitimate state purpose. Since the *Cocking* opinion, a large body of case law has developed concerning "resident relative" exclusions.[4] Insurance policies typically define "relatives" as members or residents of the named insured's household. Courts have held that the term "resident" is not "inherently ambiguous" (*Kibbee v. Blue Ridge Ins. Co.* (1999) 69 Cal.App.4th 53, 61 (*Kibbee*)), although it may be ambiguous in a "particular context." (*National Auto. & Cas. Ins. Co. v. Underwood* (1992) 9 Cal.App.4th 31, 38.) The meaning of the term "'resident'" "varies according to the circumstances and facts of the case." (*Utley v. Allstate Ins. Co.* (1993) 19 Cal.App.4th 815, 821 (*Utley*).)

Consequently, over the past 33 years various iterations of the definition of "resident relative" have been the subject of judicial interpretation, with the terms being broadly construed when the result is to find coverage and narrowly construed when the

---

[4]    We note, "resident relative" exclusions are commonly found in both automobile and homeowner's insurance policies, and accordingly, the treatises and courts reviewing automobile policies often rely on the interpretation of "resident" in the context of a homeowner's policies. Courts agree the meaning of the term "resident" is dependent on the facts of the particular case rather than the type of policy being considered.

17

result is to preclude it. What most courts appear to agree upon is "the term 'residence' "'connotes any factual place of abode of some permanency, more than a mere temporary sojourn[.]"' [Citations.] This understanding is consistent with dictionary definitions of the term 'resident' as one '"who dwells in a place for a period of some duration"' and 'residence' as '"a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit."' [Citations.]" (*Kibbee, supra*, 69 Cal.App.4th at pp. 61-62.)

Several of the cases interpreting "resident relative" exclusion clauses have concerned children who were the subject of custody orders. In such cases, "there is no bright-line test for determining a child's residency," but "the usual rules of contract interpretation and the common understanding of the terms 'resident' and 'residence' provide clear direction as to the factual inquiry a court must undertake in determining the applicability of the resident relative exclusion." (*Kibbee, supra*, 69 Cal.App.4th at p. 62.) The determination turns on whether the child regularly spends time in the household in question, "'such that there exists a continuing expectation of the child's periodic return on intervals regular enough that the household is the child's home during the time the child is there, as opposed to a place of infrequent and irregular visits[.]' [Citation.]" (*Ibid.*) Thus, a child who spends substantially equal amounts of time with each parent on a regularly rotating basis can be said to reside with each parent. (*Id.* at pp. 61-62.)

For example, in *Kibbee, supra*, 69 Cal.App.4th at page 55, a custody order provided the children "would live with each parent for alternating seven-day periods." However, after the father moved to Mexico with his new wife, the children lived exclusively with the mother. During a two-week vacation at the father's home in Mexico, one of the children and father drowned. (*Id*. at p. 56.) The mother sought recovery from the father's new wife, who tendered the defense to her homeowner's insurance policy. The insurance company refused to provide coverage based on the policy's "resident relative" exclusion clause. After the new wife sued the insurance

18

company for breach of contract, the trial court granted summary judgment in favor of the insurance company. (*Ibid.*)

The *Kibbee* court reversed the ruling, concluding the children were not residents of the father's household at the time of their visit to Mexico. The court found it significant that there were no plans for future visits by the children, and that the children had "brought with them only the clothing and toys they needed for the two-week period." (*Kibbee, supra*, 69 Cal.App.4th at p. 63.) The court held, "The conclusion is inescapable that while staying with [their father] in Mexico the boys were on a 'mere temporary sojourn.'" (*Ibid*.)

Another interesting case is *Afrasiabi v. State Farm Fire & Casualty Co.* (1999) 73 Cal.App.4th 1183, in which this court held the fact a relative pays rent to the insured homeowner did not affect his or her exclusion as a "resident relative." "It would not be at all unusual for parents to charge rent to adult children who return to the parental home. If payment of rent was made a determining factor in cases involving the 'resident relative' exclusion, it would vitiate the goal of screening out collusive lawsuits. The courts in California have recognized that the resident relative exclusion serves the public policy of insulating insurers from questionable claims." (*Id.* at p. 1187.)

*D. Analysis of Nonrelative Resident Exclusion*

Mercury cites the above statutory and case authority to support its position there is nothing wrong with expanding the "relative resident" exclusion to nonrelatives. It asserts the same policy and constitutional arguments would apply. We disagree.

In this case of first impression, Mercury seeks approval of a new "nonrelative resident" exclusion. We call it "new" because we found no case authority, law review article, or treatise examining the (c)(5) Exclusion's application to any class of persons other than "relative residents." Mercury cites to no authority permitting an insurance company to achieve liability immunity from a significantly larger class of

19

people based on their residency status alone and presumably without their knowledge or consent.

We begin by examining the scope of the new exclusion. Mercury's policy's exclusion section contains, clearly and plainly, the exact language contained in the (c)(5) Exclusion. As explained, the Legislature statutorily authorized Mercury to exclude claims of liability for bodily injury brought by "an insured." Mercury's policy defines "an insured" in Part I of the policy as including four categories of people as follows: (1) named insured and any relative; (2) persons listed in the policy; (3) permissive drivers; and (4) "residents other than" those described in categories (1) and (2) (defined above as relatives and all named insureds). In addition, the policy defines "resident" broadly as anyone who "inhabits the same dwelling as the named insured." "Inhabits" and "dwelling" are not further defined.

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.] On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' [Citations.] . . . [¶] [T]he court must interpret the language in context, with regard to its intended function in the policy. [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265.)

In the many cases discussing the "resident relative" exception, the term "'resident'" "varies according to the circumstances and facts of the case." (*Utley, surpa,* 19 Cal.App.4th at p. 821.) However, generally in those cases "an insured" in the context of applying the exclusion is limited to a small class of family members residing together with some degree of permanence. A cousin or aunt who temporarily visits a relative's

20

home for the night is not "an insured" as defined by the "resident relative" exception cases.

We found no authority, and certainly nothing in the Supreme Court's *Cocking* opinion, authorizing expansion of the exception to nonrelatives residing together. To the contrary, the *Cocking* opinion addressed the limited issue of whether *Wife* could seek benefits from *Husband's* automobile policy. The Court ruled the Legislature enacted the (c)(5) Exclusion to codify the state's public policy that permitted insurers to exclude "'the named insured *or members of his family*.'" (*Cocking, supra,* 29 Cal.3d at p. 387, italics added.) The Court rejected Wife's constitutional challenges after concluding the legislative classification related to the legitimate state purpose of preventing "'suspect inter-family legal actions which may not be truly adversary.'" (*Id.* at p. 389.) The Court determined excluding resident relatives served the public policy of insulating insurers "from 'collusive assertions of liability.'" (*Ibid.*)

Simply stated, the entire *Crocking* decision is based on the premise the (c)(5) Exclusion is being applied to a relative who resides with some permanence with the named insured. We conclude the Court's reasoning does not apply to nonrelatives "inhabit[ing] the same dwelling" as the named insured. Cohabitation can be temporary and involve complete strangers. There is no legal basis to assume insurers face the same risk of fraudulent lawsuits. College roommates often are complete strangers who do not have direct pecuniary interests or legal responsibilities with respect to each other.

It appears that Mercury's new "nonrelative resident" exclusion raises the following issue of first impression: Did the Legislature intend for there to be limits to how an insurer may define "an insured" in its policy for purposes of the (c)(5) Exclusion? We recognize the Legislature did not identify any particular group or class or persons when it enacted the (c)(5) Exclusion. As noted in the dissenting opinion of Justice Work in *Ammar, supra,* 126 Cal.App.3d at pages 843-844, "The simple fact is, the Legislature did not so identify [resident relatives], any more than it so identified nonrelatives with

21

whom the insured resides, or members of the insured's Saturday night poker club. [The (c)(5) Exclusion] was limited to excluding only those persons who fall within the category there named: insureds." (Fn. omitted.)

As we now explain, examination of California's mandatory insurance statutory scheme and public policy goals provide defined limits to who may be named "an insured" in an automobile liability policy. The (c)(5) Exclusion giving insurers immunity from liability for bodily injury to "an insured," which can be "any insured under the policy" must be read together with sections 11580.06 and 280. Section 11580.06 defines "insured" as "the person or persons to whom any policy subject to this article is issued as named insured and any other person to whom *coverage is afforded under the terms of any such policy*." (Italics added.) Pursuant to section 280, coverage can only be afforded to persons having an "insurable interest." (§ 280 ["If the insured has no insurable interest, the contract is void"].)

"As a general rule liability insurance, like other forms of insurance, must be supported by an insurable interest in the covered risk." (3 Couch on Insurance 3rd. § 41:28, fn. omitted; *Osborne v. Security Ins. Co.* (1957) 155 Cal.App.2d 201, 205 ["The object to be obtained by this rule, the reason for its being, is avoidance of wagering contracts"].) "For the purposes of liability insurance, an insurable interest is to be found in the interest that the insured has in the safety of persons or the freedom from damage to property, which might give rise to suits against him or her in case of their injury or destruction. This interest does not depend upon the insured's legal or equitable interest in property but solely upon whether he or she may be charged at law or in equity with the liability against which the insurance is procured. Therefore, title is not the test of an insurable interest in a contract of liability insurance. Insurance carried for the account of 'whom it may concern' covers anyone having an insurable interest in the insured property at the time of the happening of the loss." (3 Couch on Insurance, *supra*, § 41:28,

22

fns. omitted.)  "Thus, an individual has an unlimited insurable interest in his or her own personal liability.  For example, a father who procures a liability policy on an automobile registered in his name but used by and in possession of his minor child has a definite insurable interest in that the parent would be liable in the event the child damaged or injured third persons while driving.  However, a mortgagee of an automobile who has neither possession nor control of the car does not have an insurable interest for the purposes of liability insurance covering the operation of the vehicle."  (*Ibid.*)

Section 281 codified this rule, defining an insurable interest as, "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest."  "A mere contingent or expectant interest in anything, not founded on an actual right to the thing, nor upon any valid contract for it, is not insurable."  (§ 283.)

Accordingly, to be "an insured" the nonrelative resident must have an insurable interest.  Pham does not have an insurable interest in the nature of the potential legal liability for Chu's vehicle or Chu's actions as a driver.  Unlike a parent/child (or other familial) relationship, there is simply no basis to hold Pham liable in the event Chu damaged or injured a third person while driving the insured automobile owned entirely by Chu.  Pham and Chu were unrelated.  They were not business partners (they each paid rent separately to Aunt Diana).  The record suggests they did not have a close friendship.  None of Chu's roommates would have a potential insurable interest in either Chu or his car.  Stated another way, Mercury would not be exposed to any risk of liability with respect to Chu's vehicle simply by the fact he has roommates.

We recognize different rules would apply if Chu's roommates were also permissive users of the vehicle.  Section 11580.1, subdivision (b)(4), mandates coverage for permissive users of vehicles owned or leased to the named insured to the same extent the policy provides coverage to the named insured.  "An automobile liability insurance policy will include an 'omnibus' clause that defines . . . the term 'insured' to include not

23

only the named insured but also any other person using a covered automobile with the expressed or implied permission of the named insured." (8 Couch on Insurance, *supra,* § 111:1, fn. omitted.) This clause effectively covers a class of persons who may not possess an insurable interest when the contract is entered into. The legislative purpose behind such required coverage is "to protect innocent third parties from the careless use of automobiles and that this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence." (*Burgess v. Cahill* (1945) 26 Cal.2d 320, 323.) Our Supreme Court has repeatedly stated "the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles. . . . [F]or an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured, is a violation of the public policy of this state. . . .' [Citation.]" (*Metz v. Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 50 (*Metz*).) Section 11580.1, subdivision (b)(4), "a part of this state's financial responsibility law, is to be liberally construed to provide monetary protection for 'that ever changing and tragically large group of persons who . . . suffer grave injury' [Citations.]" (*Lovy v. State Farm Ins. Co.* (1981) 117 Cal.App.3d 834, 843, citing *Metz, supra*, 10 Cal.3d at pp. 51-53.)

In its briefing, Mercury cited *Hitchcock v. Mercury Ins. Co*. (1997) 54 Cal.App.4th 303, 305-306, to support its theory the exclusion for bodily injury to an insured extends to claims between non-family members insured under the same automobile liability policy. Not so. That case addressed the application of section 11580.1, former subdivision (b)(4), which mandated insurers to name as "an insured" permissive drivers using or "legally responsible" for the vehicle. The court held the current version of the statute deleting the phrase "legally responsible" would not apply retroactively. The case does not discuss the relative resident or nonrelative resident exclusions contained in Mercury's policy. And as discussed above, the permissive driver

24

exclusion is based on public policy reasons different from the relative resident exclusion. A vehicle owner who knowingly lends his or her car to another person is legally responsible for damages occurring during its use. (See Veh. Code, § 17150.)

To summarize, when the statutory provisions (§§ 280, 11580.1, 11580.06) are read together, they authorize the insurer to exclude any insured only if that person has an insurable interest. Permissive users, who have no ownership or control of the insured vehicle when the contract is formed, obtain an insurable interest under the statutory scheme when they perform an act from which liability under the policy may arise.

Mercury's liability policy includes as "an insured" a nonrelative, who is not a permissive user of the car, and who has no insurable interest in the car or its owner. Mercury claims Pham is "an insured" yet he could not be held liable for loss or injury caused by the operation or use of the insured vehicle merely by his presence in Chu's residence. It appears Mercury named Pham "an insured" for the sole purpose of excluding him from coverage for bodily injury caused by use of the insured vehicle by the named insured.

To accept Mercury's new exclusion, we would have to place an unreasonable obligation on Pham's and Chu's other college roommates to determine how to avoid exposure to the risk of injury by Chu, who as to them, is uninsured. Certainly, Chu's roommates could decide not to ride in the same car as him but should they also be expected to avoid walking on the streets when Chu is out driving? We conclude no public policy consideration or legal authority justifies denying Pham's claim against the named insured of the policy. We find no significance in the mere status of cohabitation. Our state's financial responsibility laws were enacted to provide monetary protection to the public.[5] If an insurer can define "an insured" as including a large population of the

---

[5] In 1974, the Legislature added section 16020 to the Vehicle Code, directing every driver and owner of a motor vehicle to maintain automobile liability insurance. It

25

public (such as all persons inhabiting a large apartment complex on the basis of cohabitation) without regard to insurable interest, it would defeat the public policy behind requiring mandatory automobile insurance liability and undermine financial responsibility laws.  The public will have no protection.  Accordingly, we must conclude the nonrelative resident clause is an overbroad expansion of the (c)(5) Exclusion and contrary to public policy.[6]

is the public policy of this state to make automobile owners financially responsible to those injured by use of those automobiles.  (*Altman v. Morris Plan Co*. (1976) 58 Cal.App.3d 951, 958.)  The court in *Anacker v. Sillas* (1976) 65 Cal.App.3d 416, 421-422, discussed the Legislature's goals in enacting the current statutory scheme, noting the Legislature declared "it is the policy of this state that those owning or operating motor vehicles on the streets or highways of this state shall be financially capable of providing monetary protection to those suffering injury to their person or property by reason of the ownership or use of such vehicles *without regard to the negligence, liability, carelessness, or culpability of the owners or operators thereof*, and further, that such capability shall be deemed a concurrent responsibility of such motor vehicle ownership or operation.  The Legislature further declares that it is the public policy of this state that those owning or operating motor vehicles on the streets or highways thereof shall evidence such financial capability by the methods specified in this act.' (Stats. 1974, ch. 1409, § 1.)  (Italics added.)" (Fn. omitted.)  The nonrelative exclusion is too far reaching, and could potentially exclude from coverage hundreds of persons inhabiting the same condominium complex, dormitory, or assisted senior living center as the named insured.  It is at odds with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damages to avoid inadequate compensation to victims of automobile accidents.

[6]     Mercury asserts the new exclusion supports public policy because "family and non-family members that inhabit the same dwelling are equally capable of bringing suspect legal action . . . and over which the insurer has little or no control."  They do not explain why friends living together are more likely to bring a fraudulent action than friends who are simply neighbors or work together.  Moreover, the possibility of collusion exists to a certain extent in any case.  We depend on juries and trial judges to weigh the evidence, judge credibility, determine the facts and arrive at proper verdicts.  Every day court and juries are faced with the task of uncovering fraudulent lawsuits.  Insurers are not without control or in need of immunity from this class of citizens.  A prompt and effective investigation can quickly establish the essential facts.

"The overbreadth can be cured only by rewriting (reforming) either the exclusion clause or the insured clauses, or both.  We are not empowered to do so.  [¶] Exclusions and exceptions contained within a policy must be construed strictly against the insurer.  [Citations.]"  (*Phelps v. Allstate Ins. Co.* (1980) 106 Cal.App.3d 752, 758-759.)  We will not rewrite Mercury's definition of "an insured" but conclude the clause including "residents other than" relatives and named insureds must be stricken as invalid.  Accordingly, the summary adjudication and JOP rulings are reversed and the matter remanded.  In light of this ruling, we need not address Mercury's cross-appeal regarding whether the judgment should have included reimbursable defense costs.  Having stricken the nonrelative resident exclusion, Mercury can no longer claim Pham was "an insured."

III

The judgment is reversed and remanded.  The court's rulings on the motion for summary adjudication and JOP are also reversed.  Chu and Pham shall recover their costs on this appeal.

O'LEARY, P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

27